Thank you, Your Honor. My name is Doug Keller and I represent Mr. Acevedo. The District Court in this case made a few different errors at sentencing and I wanted to begin and focus on its misinterpretation of the mitigating rule guideline. That guideline required the District Court to compare my client's role in the offense to the other known and likely participants, but that's not what the District Court did. In fact, I think this is quite clear with respect to the first of the five mitigating rule guideline factors. The District Court properly found that my client knew almost nothing about the overarching drug traffic organization by design, that by design they're kept in the dark. But instead of using that finding to conclude the first factor weight in his favor, the District Court came to the opposite conclusion. And if I could just quote District Court's reasoning for why I thought the first factor weight against my client, the court said, there's a systematic effort to keep importers of drugs in the dark. So understanding that, I asked myself, what would I expect someone to know whose function in the conspiracy was to drive across to know? And I think that's the way to evaluate this. In other words, the court compared my client to other couriers, as he called them importers, and decided that he basically knew what most couriers would know and then use that factor to weigh against my client. Mr. Keller, let me, one thing, one place where I disagree with you is that I'm not sure it's quite clear what the District Court was saying. The District Court said a number of things. But at one point, the District Court said, I'm not going to compare you to the higher up. That's a different kind of guy. And then he does a comparison to the mechanic who repairs the car and puts in the He is supposed to make that comparison, but then he also otherwise, especially when with the first and fifth factors, I don't think there's any way to comparatively or conceptualize what he meant with those two factors when you do the proper analysis. Let me ask you the second question, because this is what always troubles me in these cases. Your client got a sentence about half the guideline, right? Correct, more or less. And I know this is the problem that the Supreme Court's put us in and we put ourselves in, but it sure looks to me like the judge didn't think he was a major contributor. And I know there's 35, 53 factors and everything else, but did you really think the judge refused, didn't consider his role in this conspiracy? He didn't. I guess I have two points, Ron. I don't think he considered it with respect to the minor role guideline and the minor role reduction in this case would have cut my client's guideline to 46 to 57 months. So he got an above guideline sentence if he had received the minor role reduction. So it certainly mattered in this case. And I don't think there's any way to square the court's comments with the proper analysis. So if I could read you on just one more quote from the first factor, he says, all those things after discussing the little my whose role was to the importer to know and to do. So again, he's comparing my client to other hypothetical couriers. Not necessarily, because as you pointed out, when you talked about his finding that your client didn't have knowledge of the particular structure of the organization, what he's taking is he's taking what he knows about how these determinations about your client, whom he then compared to the others involved in the transaction, because he stated very clearly that you knew I'm not to hypothesize and compare him to other cases. So he said he knew that that's what he was going to do. So why isn't it that he was just using that as a template to make case specific findings and then do the appropriate case specific analysis? Well, I think even setting aside the quotes, I read your honor, I think just doing the proper analysis, the first factor is an obvious factor that should weigh that should weigh in favor of minor role. As the court itself noted, my client knows nothing almost by design. And that's exactly what this court said in Diaz. In that case, it said the client's lack of knowledge, but anything meaningful suggests that he should get a minimal role. So even a greater than a minor role reduction. And so it's not just a matter of nitpicking how the court articulated something. It's it's failure to do the proper analysis, let it's the wrong conclusion on both the first factor. Does he have to go through and say first factor favor, second factor against? I mean, does it have to do it in that formal way? Or can it just be that in light of all of the factors, here's the one that I think is most important and leads to this conclusion? I don't think you have to tick through the factors and give a formal conclusion on each factor. But the district court did that here, right? He went through each of the factors and ultimately held the first factor weight against my client, which I don't think there's any way to do that consistent with the guideline. If I could just jump to the fifth fact, because I think the analysis is the same that the court called the factor, I think a straw man factor. And he did that because in his experience, he knows that all couriers never get paid anything but a trifling amount for the overall value of the drugs. So from his perspective, that wasn't really a relevant factor because it didn't differentiate. Now, so I've seen, you know, judges who have done as many of these cases as this district judge had, he said he's done over 1000 of these, it's sort of unrealistic to expect them not to make observations. I guess the question I have for you is, are you aware of any other post Diaz Ninth Circuit case that has reversed a denial of minor role as clear error? There's only been one published case from this court, post, I'm sorry, post guideline, or I think there's been two, and they've both been reversals, but nothing since Diaz. But I also don't think this is a matter of clear error. The court's comments indicated it fundamentally misunderstood the role. Well, but you didn't, nobody said to the judge, nobody said to the judge during this process, hey, wait a minute, judge, you're comparing them to the wrong guys. Or on the fifth factor, you've made a mistake. So it seems to me in the absence of some objection, we do review for clear error, don't we? No, at the end of the day, I think it's a question of whether he properly interpreted the guideline. And we certainly asked him to interpret it properly. The government hasn't claimed for instance. Where did you ask him to interpret it properly other than making a proffer that says here where we fit within it? I mean, don't you have some obligation to correct the judge when he's making an error in front of you? I think you've been, I guess a couple of points, Your Honor. At the end of the day, we asked the judge to apply the guideline properly by providing an accurate interpretation of the guideline. And the government doesn't contend. I understand that. But let's say the judge says, I'm going to do factor one. Gee, I'm going to compare you to Willie Sutton, the great bank robber. And I think you're as culpable as the great bank robber because you both wore glasses. Don't you have to say something to the judge? Like, judge, that's wrong. You probably should. But I think if you needed to object and didn't, the consequences, you apply, you apply plain error. But even the government hasn't argued that plain error applies here. So I think they have waived it. And so if, if just like then, if the mistake for defense counsel was not making an objection below, the government needed to raise that in the brief, and they didn't. So I think this court's review is de novo. And I think it's de novo in part because our ultimate complaint here is not about its findings. It's about its interpretation and the standard it actually used. As I noted before, the court's findings on the first fact, for instance, were in our favor. We agreed with them that our client knew relatively little by design. And that, as Diaz said, suggested, should have suggested that the court weighed that factor in our favor, and it didn't. You wanted to save some time for rebuttal. Do you want to save the rest or you want to keep going? Either way. I'm happy to discuss my other issues. I do think they're good issues, but I'm also happy to reserve the rest of my time if the court has no other questions. Okay. And we'll see at the end whether any of my colleagues has questions on other issues for you. Great. Thank you, Your Honor. Let's hear from the government. May it please the court, Benjamin Hawley for the United States. So to determine whether someone is substantially less culpable than the average participant, the court necessarily needs to define and determine what average is. And that's what the court was doing. He was not comparing. In fact, he expressly said, I cannot compare to hypothetical participants. Instead, the court had to use this experience to determine what is average. This is where I'm a little confused about what the court did. You have to compare somebody to the average participant in this conspiracy, do you not? Correct. Not the average courier at large. Correct. Yes. So who was the average participant in this conspiracy? So here are the, well, so it's unidentified participants. It's not just others. Yeah, that's right. Who was the average identified participant? So here it was the mechanic who presumably loaded the drugs, is the kind of the way it was presented. He, Mr. Acevedo, knew somebody, had changed the car, had modified the car to hide this 180 pounds of drugs. That person presumably loaded the drugs. That was the comparator. The only other identified person with any specificity or at all really was the recruiter. And as the court went on- Right. And the court didn't compare that. So when he compares him to the mechanic, is he, does the district court conclude that he has the same culpability as the mechanic who loaded the drugs? I think it's slight, I mean, ultimately, yes, but I think it's slightly more nuanced than that, in that the court said he's not substantially less culpable than that person, or even more precise, the defendant has not shown, it's not met his burden of showing he is substantially less culpable. Right. So therefore, therefore, he doesn't get a credit under step one. Correct. Let's go, let's, yeah, let's go back to that. The mechanic loads the drugs in the car, and sets it up to go to the United States. Mr. Acevedo drives the car. Does he know the drugs are in it? So he said, so this is paragraph eight on the PSR, in his post arrest statement, which is what that's summarizing. He said he agreed there's possibility the car would contain methamphetamine for that crossing, maybe. He said possibly, possibly, but he knew it would be at some point, the car would be loaded. And somewhat unusually, he knew that it was going to be methamphetamine. That's something that's a little bit different than your average case. And so this was charged as a conspiracy. And so the district court, I think, was taking this as it doesn't ultimately matter if he knew it was loaded this time or the next time, because he's taking a step in favor of the conspiracy to advance the conspiracy. Mr. Hawley? Yes. Would you agree that, I mean, the artificiality here, and I think district court sentencing get frustrated, is that it is odd to have forced them to compare one defendant in front of them to unknown others, if the whole conspiracy was designed to keep everyone unknown. But would you agree with me that a district court, we would reverse if the district court said, you know, that artificiality is so frustrating to me that I'm not going to follow the 3B 1.2 factors and the Ninth Circuit's Diaz decision, it's meaningless. If a district judge said, I won't follow them because they don't make sense, we'd have to reverse. I think that's probably right in that this is ultimately a decision to some degree within the district court's discretion, right? Some courts facing the same facts might apply minor role here, others might not. And so there's a discretionary, a judgment call, and this court and the commission, through the guidelines, have kind of given us guideposts and edges to that. And as long as the judge applies those... But then when a judge says a factor is meaningless, even, you know, well-intentioned based on much more immediate experience, that's a little problematic. It's getting closer to a legal error than it is a fact determination of how much this fellow knew and what his role was. So I think that's true if the court just rejected that all five factors didn't do any of that analysis. As for the fifth factor here, I think it's different because it's not the court rejecting it out of hand. The court is saying it just doesn't differentiate an average participant from a minor participant here because in the court's experience, everyone's the same. And the whole point of this analysis is to determine what levels of culpability and kind of put people in categories or tiers. And so to the extent the fifth factor in importation cases at least doesn't do any work for differentiating, then you can put less weight on it. So it wasn't the court saying, I just reject that factor out of hand. It was, it doesn't do any work here and therefore I don't need to put much or any weight on it in making this ultimate kind of qualitative determination of whether Mr. Acevedo was substantially less culpable than the other identified participants. And so at the end of the day, I think the court did exactly what this court and the Sentencing Commission has asked it to do. It looked through the factors, it went into more detail than it necessarily needed to do. Could you... Oh, go ahead, Judge Collins. Did he, why did he end up making a credibility determination without hearing from the jurors the credibility he evaluated? So I, two responses to that. The first is that he said, I will take this at face value, meaning even, I'm going to assume it's true, and even that is not, was not sufficient because again, he said he didn't really believe it. It didn't, he was suspicious. Well, he said it was not corroborated. So even in other words, it was necessary, but not sufficient, even assuming everything he said was true, that's not going to be enough to demonstrate, to meet his burden of minor role. But he said, you know, he said, I understand he's saying that today, but I'm not so sure that that's the truth. And so I haven't given a great weight. So he's saying, I don't give a great weight because I don't find it particularly credible. And yet he didn't hear from him and evaluate whether he was telling the truth. Well, to be clear, he did hear from him during the allocution, the normal allocution. On, on the issue of what, you know, whether or not he knew the drug and the conspiracy would eventually be methamphetamine, but he did not hear from them on the issue of whether he knew he was bringing drugs over in that particular trip. Right. Well, I think that goes to the point I was making earlier that the judge, the district court was saying that that didn't, that didn't move the needle one way or the other. If he, that he knew it was meth might make a difference, but if he knew it was this trip or the next trip, either way, he's knowing he's, he's part of this conspiracy and trying to bring these drugs in. And so, again, his credibility as to that particular point didn't, didn't make a difference on the minor. Maybe you're doing a better job than the district judge explaining that. But when I see what the district judge said, as Judge Collins indicated, he didn't know, and then when he gets through sentencing, he says, but I don't find it credible. I'm not sure how you can take a statement at face value and not find it credible without making a fact determination. And did he make one? I don't, I don't know that he made a fact determination of, you know, kind of ultimately deciding credibility versus not, and again, I guess I would just go back to my earlier point of necessary versus sufficient in terms of whose burden it was. And related to that, our argument is we're on plain error review here. So it would be on the defense to, well, so let me, let me pick up Mr. Keller's schedule. Did you, did you argue that we were on plain error review? On the questioning point, not a minor role is not plain error. That's not, yeah. Okay. But yeah, but on the questioning point, correct. Because the questioning, the defense counsel just invite the district court to ask questions about mental state. Correct. And no, no, no, no judge is going to just accept an invitation to start asking questions. That could lead to more inculpatory answers in a worse sentence. He pled with a mental state that he pled to. I, your position probably is that rule 32, a judge will never have to accept the defense attorney's invest, invitation to ask a question, right? I think that's right. But even kind of more broadly, to the extent that the defense thought this was a reversible error, that, that needed an objection as opposed to, it was just raised this question. Would you like to question my client? And the court said, no, there, there was nothing there. Your time elapses because you won't be with us in the next case. I'm curious. There's a circuit split on what supervised release conditions have to be announced at sentencing. Right. Is it your view that the ninth circuit has a published and binding answer to that? Correct. Napier without qualification, without caveat said standard and mandatory conditions are necessarily included. They are implicit. The fourth circuit in the Rogers case, the one that Mr. Keller noted in a 28 J letter, cites the ninth circuit's decision as affirmative on that. It is not. The ninth circuit there was looking at nonstandard conditions. So, so any inferences to what they meant about standard ones is dicta wrong? I think that is wrong because we're not relying on inferences. It would be correct if we had to infer what the court was doing, but the court was very clear in multiple places that an oral sentence necessarily includes the standard conditions. It's implicit to have mandatory and standard conditions. And then it distinguished what the district court did there. It said, nevertheless, it's the better practice to announce these mandatory and standard conditions. It wouldn't need to make that, that kind of caveat about the specific facts. Every condition that this defendant got was recommended by the PSR, except for school counselors work, right? Correct. The PSR recommended several special conditions. So if the district judge had just said, I impose what the PSR recommends, we would have no problem. We would not. I don't know if the defense would, but I think that's correct. Yeah. Okay. Let me ask you about the last condition that Judge Higginson spoke of. Don't we need to correct that in some way? I don't think so, because it's not directly in conflict, the oral and the written order. Well, I mean, I know school seems like work to many people, but they're different, aren't they? Yes. I think they would be different, but I think the written order is, that they don't conflict in the sense of, they're not different. They are, one is... The written order is under inclusive. Is that a better way to put it? There we go. Thank you. So why don't we just exercise our power to modify the written order to include it? I mean, the court could, to the extent you think there's a conflict. I just don't think it needs to be remanded back for an entirely new hearing about that kind of relatively minor distinction. Yeah. I mean, I read our Ninth Circuit cases as saying, if we can correct, we can, you know, we can just say the oral judgment on this point is binding, the written judgment doesn't limit it. Yes. I think that's correct. Sometimes the court remands, often it does exactly what your Honor is suggesting. Okay. Any more questions for Mr. Hawley? Nope. Mr. Keller, you're back up. Thank you, Your Honor. I wanted to address two questions that I just had for my colleague, Mr. Hawley. First, with respect to Judge Higginson's question about whether we were allowed to invite the district court judge to question our client, certainly nothing in the rules prevents us from asking the judge to question our client. This judge in particular often will question our clients and we certainly prep them to be prepared to answer honestly to questions and I think in this case, we believed our client was telling the truth and we thought if he said that in front of Judge Burns, Judge Burns would see he's being honest and genuine and credit his statement. So I don't think there's anything untoward about simply asking him to- Deal with Mr. Hawley's response to that, which makes some sense to me. I'm not sure it's exactly what Judge Burns said. Isn't effectively what he said was, look, I really don't care whether you knew there was meth in the car this time because you've admitted that you knew there was going to be meth in the car sometime and so it's really not very important to you on this point or not. It seems to me that's an appropriate way to deal with it, isn't it? Maybe, but that's just not what he said. I mean, I think Mr. Hawley said effectively what the judge said and that's, I think what he's trying to do is rewrite what the district court judge did. Honestly, I think what happened is Judge Burns just forgot his prior comments and forgot about our offer to question Mr. Acevedo and you know, it's just an example of a mistake happened and I think if you had questioned our client, he would have come to the opposite conclusion. This wasn't a trivial point. This really was, I think, central to our minor role argument that our client knew so little that he literally did his central act in the conspiracy without even realizing it and I think if you would have questioned the client, he would have, he would have realized that. I know my time is up. If I could just make one more brief point about, about minor role. Sure. We took, we took your colleague over. So please quickly. Sure. So this, I also wanted to respond to Judge Dickinson's question or comments about, I think sort of what Judge Burns said about the fifth factor. And I think your, your inferences about what Judge Burns was saying is absolutely right, that he makes a reference to what those out of touch people in San Francisco think he was referencing that this court's opinion and Diaz, when he said that he disagrees with that decision. And he doesn't understand how it could apply the way it does. And I think that's because he thinks he is, what he's really doing is comparing different couriers to other couriers. That's why he thinks the fifth factor is a straw man factor because no courier gets to pay anything but a small amount. And he thinks that is, means that the fifth factor should always weigh against minor role, or at least not count in the analysis. So I didn't think it's further confirmation that the court misinterpreted the guideline. And so I would ask that you send it back for at least that reason. But if it's not for the reasons I mentioned in my brief. Judge Hurwitz, may I ask Mr. Keller one question? Go ahead, Judge Dickinson. You heard the government's response as to Napier. Do you agree that Napier is binding Ninth Circuit law that guidelines standard conditions, though discretionary under the statute, are impliedly pronounced in the Ninth Circuit? I disagree with that. And I think it's just a classic case of dicta. I mean, dicta is something that's unnecessary to the decision. And in Napier, the district court that's literally there explicitly incorporated both the standard and mandatory conditions. So I think you asked, what if the court here had explicitly said, I am adopting all the recommended conditions in the PSR? That would be enough because in the court, just like the court in Napier is telling the defendant and defense counsel exactly what he is doing. Yeah. Thank you very much. Thank you, Your Honors. Thank both counsel for their argument and briefing in this case, which will be submitted.
judges: Higginson, Hurwitz, Collins